## NORWICH UNION FIRE INS. SOC. v. STANDARD OIL CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 29, 1894.)

### No. 317.

INSURANCE—SUBROGATION—PARTIES.

An insurance company subrogated to the rights of the assured by paying a loss caused by the wrong of a third person cannot maintain an action against the latter in its own name, if the loss exceeds the amount of the insurance paid, but in such case the action must be brought in the name of the insured.

In Error to the Circuit Court of the United States for the District of Kansas.

This was an action by the Norwich Union Fire Insurance Society, of Norwich, England, against the Standard Oil Company and the Goodlander Mill Company, to recover the amount of certain insurance paid by the plaintiff to the defendant mill company, upon the ground that the property was burned through the culpable negligence of the defendant oil company. A demurrer to the complaint was sustained, the court (June 6, 1892) rendering the following opinion:

RINER, District Judge. "This case is before the court on demurrer to the plaintiff's petition. It is alleged in the petition that in the year 1887 the Norwich Fire Insurance Society issued a policy of insurance, in the sum of $3,000, to the Goodlander Mill Company,—a corporation organized under the laws of Kansas, and doing business at Ft. Scott; that the insurance was upon certain wheat owned by the mill company. The petition further shows that the German Fire Insurance Company had also issued a policy of insurance in the same amount—$3,000—to the mill company, upon wheat. The last-mentioned policy having been assigned to the plaintiff in this case, plaintiff brings this suit to recover the amount of both policies,—$6,000. The petition further shows that after the issuance of the policies of insurance the wheat was destroyed by fire, and that these insurance companies paid the loss in the amount of their respective policies, $3,000 each, and took an assignment in writing of whatever claim the mill company might have

against the defendant because of the loss to the amount of their policies. It is further alleged that the fire occurred by reason of the negligence of the defendant the Standard Oil Company. The facts stated in the petition are to the effect that the defendant shipped a tank car of petroleum from Lima, Ohio, consigned to the gas company at Ft. Scott, which car was placed upon a side track near the mill and elevator of the Goodlander Mill Company, and that the employes of the gas company attempted to unload the car, but, because of the defective construction of the car, the oil escaped, took fire, and the mill and its contents were destroyed. It appears upon the face of the petition that the wheat destroyed by fire was of the value of $20,000, and that there were other policies of insurance upon the wheat, in addition to those upon which this suit is based. The written assignment given by the Goodlander Mill Company to the plaintiff in this case and to the German Fire Insurance Company fixes the value of the wheat destroyed at $40,000. While this assignment is not in the body of the petition, a copy of it is attached to, and made a part of, the petition. Hence, it is clearly shown by the petition that the amount here sued for is but a small part of the loss actually sustained by the Goodlander Mill Company in the destruction of its property by the fire alleged to have been caused by the defendant's negligence.

"The question, therefore, raised by the demurrer, is whether or not the plaintiff can maintain an action in its own name against the party through whose negligence the fire is alleged to have occurred, when the petition shows that the whole loss was far in excess of the amount covered by the policies of insurance which are made the basis of this action. In other words, the Goodlander Mill Company having sustained the loss of its property by and through the negligence of the defendant, and the insurance companies having paid the amount of their policies, thereby becoming subrogated to the rights of the Goodlander Mill Company, to the value of their policies, can they maintain an action in their own name, when it appears upon the face of the petition that their claim is but a small part of the loss for which the Standard Oil Company is liable to the Goodlander Mill Company, if liable at all? I think it must be conceded that but one wrong is shown by the petition in this case, and that that wrong is done to and suffered by but one party,—the Goodlander Mill Company,—and that, if the mill company had brought the suit, it would have been required to include its entire claim in one cause of action. The mill company having but one cause of action against the defendant, can that cause of action be divided among the parties who, by payment of policies of insurance, become subrogated to its rights to the extent of their policies, and a number of causes of action be thus made out of the one cause originally existing in favor of the mill company? The wrong complained of is the destruction of the mill company's property, and the right of action exists, if at all, because of the negligence of the defendants in using a defective car. Thus, originally, there was but one cause of action and but one liability. The defendant was liable for but one thing, namely, its act of negligence. Its act was but one wrong, but one tort, and for that wrong the mill company had its cause of action, but was obliged to embrace its entire claim in one action. While it is true that the plaintiff is subrogated to the rights of the mill company against the wrongdoer, to the extent of the money paid upon its policies, yet it can have no greater rights than the mill company originally had. The mill company could not have divided its cause of action, and brought a dozen suits for the purpose of recovering for the one wrong; and I think, within all of the cases, that the parties cannot, by taking the course pursued in this case, divide a single cause of action, and bring a dozen or more suits to recover on a single cause of action. If the plaintiff is allowed to maintain this action, then each insurance company holding a policy on this property could maintain a separate action for the amount of its policy, and if the policies, altogether, did not amount to the value of the property, the mill company could still maintain an additional action for the balance; thus dividing the single cause of action existing in favor of the mill company into a dozen or more suits, and requiring the defendant to defend in a dozen or more suits, to have the one question determined, namely, whether

or not its negligence caused the loss, for upon this question alone depends the right of recovery in favor of any of the parties in interest, whether their interest be by way of subrogation or otherwise. The supreme court of Illinois, in discussing this question, say: "The wrongdoer is liable to the owner of the property for the injury he has done him, and, although a wrongdoer, it is still his right to have the loss adjusted · in a single suit.' This, I think, is a clear statement of the rule. By taking this course the question of the liability of the defendant can be determined in a single suit; and if, in the trial of that action, it shall be determined that liability exists, then, when the judgment is obtained, the court can direct how the proceeds of that judgment shall be divided among the parties claiming an interest in it, thus avoiding a multiplicity of suits. This rule, it seems to me, is reasonably and fully supported by authority both in England and this country. See Aetna Ins. Co. v. Hannibal & St. J. R. Co., 3 Dill. 1, Fed. Cas. No. 96; Hall v. Railroad Co., 13 Wall. 367; Insurance Co. v. Frost, 37 Ill. 334; Hart v. Railroad Corp., 13 Metc. (Mass.) 99; Baird v. U. S., 96 U. S. 430; Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., 41 Fed. 643. In the case last cited, Judge Caldwell states the rule as follows: 'Where the value of the property exceeds the insurance money paid, then the suit must be brought in the name of the assured,'—and cites cases in 3 Dill. as authority upon that question.

"I do not deem it necessary to discuss the second proposition suggested at the argument, viz. that the action must be brought in the name of the real party in interest. This question was disposed of in the case of Aetna Ins. Co. v. Hannibal & St. J. R. Co., 3 Dill. 1, Fed. Cas. No. 96. The demurrer will be sustained."

Plaintiff sued out a writ of error, and the judgment of the circuit court is now affirmed.

The Goodlander Mill Company owned a mill at Ft. Scott, Kan., which, together with its contents, including $60,000 worth of wheat, was destroyed by fire on the 19th day of November, 1887. The plaintiff in error had issued to the mill company a policy of insurance for $3,000 on the wheat in the mill. This policy was in force when the wheat was burned, and the plaintiff paid the amount thereof to the mill company, and brings this action against the Standard Oil Company to recover the amount paid to the mill company, upon the ground that the wheat was burned through the culpable negligence of the oil company. The complaint avers that the value of the wheat burned was $60,000, and that, "in addition to the policy taken out in the plaintiff company, there were ten other concurrent fire insurance policies taken out in other companies, equaling three-fourths of the value of the wheat, and also other policies on the buildings in which the said wheat was contained." It is further averred in the complaint that the plaintiff requested the mill company to join it as a party plaintiff in this suit, which it refused to do, whereupon the plaintiff made it a defendant, and that prior to the commencement of this suit the mill company brought an action against the Standard Oil Company, which was then pending, to recover the value of the mill and its contents, upon the ground that the negligence of the oil company occasioned the loss, but that the mill company did not, in that action, seek to recover the amount paid to it by the plaintiff in satisfaction of its policy. There was a demurrer to the complaint, which was sustained, and the plaintiff sued out this writ of error. Judge Riner's opinion sustaining the demurrer is reported supra.

E. F. Ware, (Charles S. Gleed, James Willis Gleed, D. E. Palmer, and C. Hamilton, on brief,) for plaintiff in error.

A. A. Harris and Oliver H. Dean, (William Warner, William D. McLeod, and Henry E. Harris, on brief,) for Standard Oil Company, defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The circuit court sustained the demurrer to the complaint on the ground that the plaintiff could not maintain the action in its own name, and the correctness of this ruling is the only question we find it necessary to consider.

When an insurance company pays to the assured the amount of a loss of the property insured, it is subrogated, in a corresponding amount, to the assured's right of action against any other person responsible for the loss. This right of the insurer against such other person is derived from the assured alone, and can be enforced in his right only. At common law it must be asserted in the name of the assured. In a court of equity or of admiralty, or under the modern codes of practice, it may be asserted by the insurance company in its own name, when it has paid the insured the full value of the property destroyed. St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S. 223, 235, 11 Sup. Ct. 554, and cases cited; Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., 41 Fed. 643. But the rule seems to be well settled that, when the value of the property exceeds the insurance money paid, the suit must be brought in the name of the assured. Aetna Ins. Co. v. Hannibal & St. J. R. Co.. 3 Dill. 1, Fed. Cas. No. 96; Assurance Co. v. Sainsbury, 3 Doug. 245; Insurance Co. v. Bosher, 39 Me. 253; Hart v. Railroad Corp., 13 Metc. (Mass.) 99; Connecticut, etc., Ins. Co. v. New York, etc., R. Co., 25 Conn. 265, 278; Insurance Co. v. Frost, 37 Ill. 333; Fland. Ins. pp. 360, 481, 591; Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., supra. In such an action the assured may recover the full value of the property from the wrongdoer, but as to the amount paid him by the insurance company he becomes a trustee; and the defendant will not be permitted to plead a release of the cause of action from the assured, or to set up as a defense the insurance company's payment of its part of the loss. Hart v. Railroad Corp., supra; Hall v. Railroad Co., 13 Wall. 367. In support of this rule it is commonly said that the wrongful act is single and indivisible and can give rise to but one liability. "If," says Judge Dillon in Aetna Ins. Co. v. Hannibal & St. J. R. Co., supra, "one insurer may sue, then, if there are a dozen, each may sue; and, if the aggregate amount of all the policies falls short of the actual loss, the owner could sue for the balance. This is not permitted, and so it was held nearly a hundred years ago, in a case whose authority has been recognized ever since both in Great Britain and in this country."

The learned counsel for the plaintiff in error challenges the soundness of this rule, and contends with much force that the rule that a wrongdoer who injures many people by the same act is liable to each person separately for the injury done to each should be applied to this class of cases. It is said, "The convenience of the innocent injured man to sue and get reparation is paramount to the inconvenience of the wrongdoer who suffers from a multiplicity of suitors." It would serve no useful purpose to

repeat here the reasoning of the courts in answer to this contention. The subject is fully gone over in the authorities we have cited.

The rule that, where the property exceeds in value the amount insured, the suit must be in the name of the assured, seems not to rest so much upon the necessity or desirability of exempting the wrongdoer from a multiplicity of suits as upon the peculiar nature of the relation existing between the assured and the insurer. It is held by the supreme judicial court of Massachusetts (Hart v. Railroad Corp., supra) and by the supreme court of the United States (Hall v. Railroad Co., supra) that in respect to the ownership of the property, and the risk incident thereto, the owner and the insurer are considered but one person, having together the beneficial right to the indemnity due from one who is responsible for its loss. When the insurer pays the assured the full value of the property destroyed, the insurer may maintain an action in his own name against one responsible for its loss, because, by operation of law, the whole beneficial right to indemnity from the wrongdoer has been vested in the insurer. He is therefore the real and only party in interest, and, under the Code, the proper party to bring the suit. But, when the value of the property destroyed exceeds the insurance money paid, the beneficial right to indemnity from the wrongdoer remains in the assured, for the whole value of the property,—for the unpaid balance due to himself, as well as for the amount paid by the insurer, as to which last sum he is chargeable as a trustee.

It will be observed that in this case 10 other insurance companies have issued separate policies on the property, and that the aggregate amount of all the policies only equals three-fourths of the value of the property, and that the assured has brought suit against the oil company for the value of the property destroyed. If the contention of the plaintiff in error is sound, then the 11 insurance companies and the assured can each maintain a separate action against the alleged wrongdoer. We are cited to no case which supports this contention, and we do not think one can be found. The allegation of the complaint that the mill company, in its action against the oil company, makes no claim for the amount of insurance paid by the plaintiff, does not alter the case; for, if this was done at the request of the plaintiff, it cannot complain, and if it was done by the mill company on its own motion, and it recovers in the action, it will hold an amount of the recovery equal to the insurance paid as trustee for the plaintiff.

The judgment of the circuit court is affirmed.