Submitted June 23, affirmed November 12, 2015

Diana LOUCKS,
a Personal Representative of
the Estate of James Dorsett,
Deceased,
*Plaintiff-Appellant,*

*v.*

BEAVER VALLEY'S
BACK YARD GARDEN PRODUCTS,
*Defendant-Respondent.*

Columbia County Circuit Court
132573; A156750

362 P3d 277

Joanna Wagner and Clarke Griffin LLC filed the brief for appellant.

No appearance for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

ORS 652.140(2) requires an employer to pay unpaid wages within a specified time to an employee who "quits employment" without notice. ORS 652.150(1) provides for a penalty if an employer fails to pay wages within the time specified by ORS 652.140. Plaintiff is the personal representative of the estate of decedent, James Dorsett. Decedent was employed by defendant and died during the course of that employment. Defendant did not pay the wages owed to decedent within the time specified by ORS 652.140(2). Plaintiff brought a penalty claim under ORS 652.150(1) against defendant. Plaintiff claimed that decedent had "quit[] employment" under ORS 652.140(2) by dying on the job, and that defendant owed decedent's estate a penalty under ORS 652.150(1) because it failed to timely pay decedent's unpaid wages under ORS 652.140(2).

The trial court dismissed plaintiff's complaint for failing to state a claim for the penalty, concluding that decedent had not "quit[] employment" under ORS 652.140(2). On appeal, we understand plaintiff to argue that the trial court erred for two reasons: first, that a penalty is owed because the term "quit," as used in ORS 652.140, includes dying; and, second, that we should construe ORS 652.140(2) and ORS 652.150(1) to regulate the timing for the payment of decedent's unpaid wages under ORS 652.190. We conclude that ORS 652.140 does not apply to employees who die on the job and that the timing for payments under ORS 652.190 is regulated by ORS 652.120(1),[1] not ORS 652.150(1) and ORS 652.140(2). Accordingly, the trial court did not err by dismissing plaintiff's complaint.

On review of a dismissal for failure to state a claim, we review for legal error, "taking as true all well-pleaded factual allegations, and giving plaintiff the benefit of all reasonable inferences that can be drawn from those facts." *Nationwide Ins. Co. of America v. TriMet*, 264 Or App 714, 715, 333 P3d 1174 (2014) (internal quotation marks omitted).

---

[1] ORS 652.120(1) provides, "Every employer shall establish and maintain a regular payday, at which date the employer shall pay all employees the wages due and owing to them."

Defendant employed decedent as a semi-truck driver. On or about September 24, 2012, decedent died on the job in a truck accident. Plaintiff, the personal representative of decedent's estate, asked defendant to pay decedent's unpaid wages to her as required by ORS 652.190.[2] More than 90 days later, defendant sent plaintiff a final paycheck. The check allegedly withheld unauthorized deductions and could not be cashed due to insufficient funds in defendant's account.

As noted, plaintiff filed an action seeking to recover a penalty under ORS 652.150(1) for failure to timely pay the final paycheck.[3] The trial court granted defendant's motion to dismiss the complaint under ORCP 21 A(8) for failing to state a claim for relief and entered a judgment in favor of defendant. On appeal, plaintiff advances the arguments discussed above. Thus, the first issue in this case is the meaning of "quit" as used in ORS 652.140(2). That statute provides, in relevant part:

"(2)(a)   When an employee who does not have a contract for a definite period *quits employment*, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of *intention to quit* employment.

"(b)   Except as provided in paragraph (c) of this subsection, if the employee has not given to the employer the notice described in paragraph (a) of this subsection, the wages become due and payable within five days, excluding

---

[2] ORS 652.190 provides, in relevant part:

"All wages earned by an employee, not exceeding $10,000, shall, upon the employee's death, become due and payable to the employee's surviving spouse, or if there is no surviving spouse, the dependent children, *** to the same extent as if the wages had been earned by such surviving spouse or dependent children."

[3] ORS 652.150(1) provides, in relevant part:

"[I]f an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced. ***

"(a) In no case shall the penalty wages or compensation continue for more than 30 days from the due date[.]"

Saturdays, Sundays and holidays, *after the employee has quit,* or at the next regularly scheduled payday *after the employee has quit*, whichever event first occurs."

(Emphases added.)

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In discerning that intent, we look at the text and context of the statute, as well as any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The plain text is the best evidence of the legislature's intent. *PGE*, 317 Or at 610. Words in common usage, like "quit," are construed in accordance with their plain, natural, and ordinary meaning. *State v. Couch*, 341 Or 610, 618, 147 P3d 322 (2006). We may turn to dictionaries in order to determine the plain, natural, and ordinary meaning of a word. *See State v. Higgins*, 165 Or App 442, 445, 998 P2d 222 (2000) ("[D]ictionaries may be consulted to help ascertain the meaning of words within a statute."). The context of a statutory provision includes other related statutes, *PGE*, 317 Or at 611, as well as prior versions of the statute, *Harris and Harris*, 349 Or 393, 402, 244 P3d 801 (2010).

Applying that method of statutory construction, the plain meaning of the word "quit" is "to leave or leave off from: as * * * to terminate (as an action, activity, or employment) esp. with finality : LEAVE" or " to give up employment : stop working : LEAVE." *Webster's Third New Int'l Dictionary* 1867 (unabridged ed 2002). In light of that plain meaning, plaintiff argues that death constitutes quitting under the statute, because, when an employee dies, he or she stops working.

We disagree. Although both dying and quitting necessarily involve the cessation of work, "quitting" would not generally be understood to include stopping work involuntarily, either because the employer fires the employee or because the employee involuntarily dies while still employed. Rather, "quitting" is generally understood to be an intentional and voluntary act—an employee quits when he or she chooses to "give up employment." The text of ORS 652.140 bears this out. ORS 652.140(2)(a) obligates an employer to pay wages immediately when an employee gives particular

notice "of intention to quit employment," suggesting that quitting is an intentional act. We conclude that the term "quit," as used in ORS 652.140(2), means an intentional and voluntary act and does not refer to a person who involuntarily dies while employed.

Plaintiff argues that we should construe ORS 652.140(2) and ORS 652.150(1) in conjunction with ORS 652.190 "as part of a greater statutory scheme to ensure that a minor child of a decedent employee can step into the shoes of that employee for the purposes of" Oregon's wage laws. Put another way, plaintiff contends that ORS 652.140(2) and ORS 652.150(1) regulate the timing of wages that are due and payable under ORS 652.190. We conclude to the contrary—wages that are due and payable under ORS 652.190 are paid in accordance with ORS 652.120(1), not ORS 652.140(2) and ORS 652.150(1).

ORS 652.190 provides a specific wage entitlement when an employee dies. ORS 652.190 ("All wages earned by an employee, not exceeding $10,000, shall, upon the employee's death, become due and payable to the employee's surviving spouse, or if there is no surviving spouse, the dependent children, * * * to the same extent as if the wages had been earned by such surviving spouse or dependent children."). ORS 652.120(1) provides for the timing of the payment of "wages due and owing" to an employee. It provides that "[e]very employer shall establish and maintain a regular payday, at which date the employer shall pay all employees the wages due and owing to them." ORS 652.120(1).

Thus, when a surviving family member substitutes for a wage earner under ORS 652.190, he or she is entitled to be paid the wages that are due and owing to the wage earner on the regular payday for those wages. If a decedent's employer fails to pay those wages at that time, that person may bring a wage claim under ORS 652.120(1) to collect the unpaid wages. *Cf. Arken v. City of Portland*, 351 Or 113, 145, 263 P3d 975, *adh'd to on recons sub nom Robinson v. Public Employees Retirement Board*, 351 Or 404, 268 P3d 567 (2011) ("The essence of a wage claim [under ORS 652.120(1)] is an assertion that one has not received payment from one's employer of wages due and owing." (Internal quotation marks omitted.)). Additionally, the wage claim statutes

provide remedies and penalties for failure to pay wages as required by ORS 652.120(1) different from the remedies provided by ORS 652.150. *See generally* ORS 652.330 (providing that the Bureau of Labor and Industries may independently investigate wage claims, take assignments of wage claims from employees, pursue criminal sanctions against employers who fail to comply with the wage claim statutes, and conduct administrative proceedings to adjudicate and enforce wage claims); ORS 652.332 - 652.445 (establishing procedures for administrative adjudication and enforcement of wage claims); ORS 652.990(3) (classifying violation of ORS 652.120 as a Class A violation). Therefore, we conclude that payments under ORS 652.190 must be made to a decedent's spouse or dependent children on that decedent's next regularly scheduled payday—not at the time provided by ORS 652.140(2)—and that the remedies and penalties available if an employer fails to make those payments on time are those provided by the wage claim statutes for noncompliance with ORS 652.120(1)—not the penalties provided by ORS 652.150(1).

The history of the relevant statutes is consistent with those conclusions. The predecessors to both ORS 652.140 and ORS 652.190 suggest that the legislature has always intended quitting and dying to be distinct occurrences warranting different remedies.

The predecessor to ORS 652.140 was enacted in 1907 as Oregon Laws 1907, chapter 163, section 2. As originally enacted, that provision contained more explicit language about the voluntary nature of quitting: "When any such employee, * * * *shall see fit to quit or resign* his employment, all wages earned and unpaid at the time of such quitting or resignation shall become due and payable immediately[.]" Lord's Oregon Laws, title XXXVII, ch IX, § 5067 (1910) (emphasis added). An employee's death would likely not have been covered under that provision because dying presumably would not be "see[ing] fit to quit or resign."[4]

---

[4] The words "see fit to" remained in the statute until 1947, when it was amended to read "shall quit his employment." Or Laws 1947, ch 193, § 1; OCLA § 102-604 (1944-47 pocket part). The removal of the term "see fit," however, does not suggest an intent to broaden the meaning of "quit" to involuntary acts or occurrences such as dying.

In 1941, when the predecessor to ORS 652.140 (then codified as OCLA section 102-604) still expressly described quitting as voluntary, the legislature adopted the predecessor to ORS 652.190 (then codified as OCLA section 102-607a (1943 pocket part)), which provided that an employee's wages become due and payable at death to the surviving spouse. Or Laws 1941, ch 105, § 1. Thus, it appears that the legislature considered voluntarily quitting (OCLA section 102-604) and death (OCLA section 102-607a (1943 pocket part)) to be different concepts and created different remedies for nonpayment of wages in each circumstance. Those statutes did not cross-reference each other or in any way suggest that *both* laws addressed what happens when an employee dies. Again, the two types of claims remain separate and distinct today: one under ORS 652.190 when an employee dies and one under ORS 652.140(2) when an employee voluntarily quits with or without notice.

Thus, we conclude that a person who dies while employed has not "quit" as that term is used in ORS 652.140(2). Moreover, ORS 652.120(1), not ORS 652.140(2) and ORS 652.150(1), regulates the timing of payments made under ORS 652.190. Accordingly, the trial court did not err in dismissing plaintiff's complaint seeking relief under ORS 652.150(1).

Affirmed.